## In re Warren Thompson

[697 A.2d 1111]

No. 96-175

Present: **Gibson, Dooley, Morse and Johnson, JJ., and Allen, C.J. (Ret.),** **Specially Assigned**

Opinion Filed June 6, 1997

*Robert Appel*, Defender General, and *William A. Nelson*, Appellate Attorney, Montpelier, for Petitioner-Appellant.

*Jeffrey L. Amestoy*, Attorney General, and *Susan R. Harritt*, Assistant Attorney General, Montpelier, for Respondent-Appellee.

**Allen, C.J. (Ret.)**, Specially Assigned. Petitioner, who is seeking post-conviction relief from two sexual assault convictions on the grounds that the trial court accepted his no-contest pleas without first informing him of the nature of the crimes charged and the range of potential penalties, appeals the superior court's order granting the State summary judgment. We affirm.

In August 1990, petitioner was accused of brutally and repeatedly raping a woman that he had encountered in the early hours of the morning in front of her apartment. The State's informations set forth the elements and penalties associated with the charged offenses — sexual assault, aggravated sexual assault, and kidnapping. Two experienced members of the Defender General's Office were assigned to represent petitioner.

A little more than a year after petitioner's arrest, defense counsel moved to determine his competency to stand trial. The court found petitioner to be competent and set a trial date. During jury selection, the parties announced that they had reached a plea agreement under which (1) the State would dismiss the kidnapping charge; (2) petitioner would plead no contest to the two remaining charges; (3) the State would recommend a sentence of thirty-five to forty-nine years to serve for the aggravated sexual assault and fifteen to twenty years to serve concurrently for the sexual assault; (4) petitioner would not be permitted to argue for a lesser sentence; (5) petitioner would waive

his right to sentence reconsideration; (6) the parties would ask the court to recommend that petitioner receive mental health treatment; and (7) petitioner would be permitted to appeal the court's ruling that he was competent to stand trial. These conditions were set forth in three forms signed by petitioner and defense counsel. The forms were presented to and signed by the trial court judge, who referred to them during the ensuing colloquy regarding the plea.

The trial court began the colloquy by addressing defense counsel in open court with petitioner present. Responding to the court's questions, defense counsel indicated that he and his client had reviewed the evidence in the case as it related to the aggravated sexual assault and sexual assault charges and were convinced that the State could make out a prima facie showing of the elements of each offense. At the court's request, the prosecutor then stated the facts that formed the basis for each offense. Next, the court addressed petitioner personally, confirming that (1) he was not impaired or under the influence of any drug; (2) he had had an opportunity to discuss the case with his attorneys; (3) his attorneys had answered all his questions; (4) he was aware that he could ask the court questions at any time; (5) he knew that he had a right to a jury trial in which he could call his own witnesses; (6) he understood that he would be giving up that right if the court accepted his no-contest pleas; (7) he had signed the three plea-agreement forms that the court was showing him; (8) he understood that he could still withdraw the plea, go to trial, and make the State prove its case; and (9) it was his decision, after discussing the case with his two attorneys, to plead no contest to the charges. At the end of the colloquy, petitioner then informed the court that he wished to plead no contest to charges of sexual assault and aggravated sexual assault.

On direct appeal, in addition to challenging the district court's competency determination, petitioner argued for the first time that the court violated V.R.Cr.P. 11(c)(1) and (2) by accepting his no-contest plea without first determining that he understood the nature of the crimes charged and the range of the penalties that could be imposed for those crimes. We affirmed the competency ruling and rejected the latter argument, finding no plain error. See *State v. Thompson*, 162 Vt. 532, 533, 650 A.2d 139, 140 (1994) (citing *State v. Doleszney*, 139 Vt. 80, 81, 422 A.2d 931, 932 (1980), for proposition that absent plain error, claim alleging violations of Rule 11(c) in taking plea demands factual record and opportunity for trial court to grant relief before this Court may properly review it). We also rejected petitioner's motion for reargument.

Petitioner then sought post-conviction relief, arguing that (1) the trial court's complete failure to explain to him the nature of the crimes charged and the potential punishment for those crimes violated Rule 11(c) and his right to due process; (2) the trial court's aforementioned failure together with defense counsel's inability to explain the same to petitioner violated his right to due process; and (3) the trial court's aforementioned failure together with petitioner's inability to understand the same violated his right to due process. Petitioner requested that the superior court vacate his conviction and sentence and allow him an opportunity to change his plea. Following a hearing on petitioner's motion for summary judgment, the court granted the State summary judgment, concluding as a matter of law that the colloquy at the change-of-plea hearing substantially complied with the requirements of V.R.Cr.P. 11(c) and did not violate petitioner's right to due process. On appeal, petitioner argues that (1) the superior court should have granted him summary judgment on the record showing that the district court failed to abide by Rule 11(c); (2) the superior court erred by granting summary judgment to the State because a substantial factual dispute existed as to petitioner's understanding of the nature of the charged offenses and the penalties he faced; and (3) the plea-taking procedure that the district court followed violated due process by failing to establish his understanding of the nature of the offenses and the potential punishment for those offenses.

■ The part of Rule 11 relevant to this appeal provides that the trial court shall not accept a guilty or no contest plea

> without first, by addressing the defendant personally in open court, informing him of and determining that he understands the following:
> (1) the nature of the charge to which the plea is offered;
> (2) the mandatory minimum penalty, if any, and the maximum possible penalty provided by law for the offense to which the plea is offered . . . .

V.R.Cr.P. 11(c)(1)-(2). The purpose of these and the other provisions in Rule 11(c)-(d) is to assure that a plea is knowingly and voluntarily made. Reporter's Notes, V.R.Cr.P. 11. "[W]e have always required a practical and functional application of V.R.Cr.P. 11 — not as a technical formula, but rather as a guideline to insure fairness to a defendant in the taking of a plea." *State v. Ploof*, 162 Vt. 560, 563, 649 A.2d 774, 776-77 (1994).

As petitioner all but concedes, his claims that the district court's colloquy violated Rule 11 and his right to due process do not hold up under the standard of proof imposed by this Court in post-conviction-relief (PCR) cases. In such cases, we have held that the petitioner has the burden of showing that the court's failure to comply strictly with Rule 11 prejudiced him. See *In re Hall*, 143 Vt. 590, 595, 469 A.2d 756, 758 (1983) (burden of proving that procedural shortcoming hampered or frustrated exercise of accused's rights rests squarely on petitioner in PCR cases); *In re Bentley*, 144 Vt. 404, 410, 477 A.2d 980, 983 (1984) (to show prejudice, petitioner must demonstrate that he was unaware of nature of charges and consequences of plea, and that his lack of understanding caused him to plead no contest); see also *In re Cohen*, 161 Vt. 432, 434, 640 A.2d 34, 36 (1994) (in PCR hearing, ultimate focus is on fundamental fairness of proceedings); *State v. Bristol*, 159 Vt. 334, 337, 618 A.2d 1290, 1291 (1992) (to obtain post-conviction relief, petitioner must establish by preponderance of evidence that fundamental errors rendered his conviction defective).

PCR petitioners cannot prevail by merely claiming technical or formal violations of Rule 11. If the record of the plea hearing, including the trial court's colloquy with the defendant, establishes that the defendant made a knowing and voluntary plea with full understanding of its consequences, then the trial court's failure to explain the nature of the charges or to outline the minimum and maximum penalties of the charged offenses does not require reversal of the conviction or sentence. See *Bentley*, 144 Vt. at 410-11, 477 A.2d at 983 (court failed to explain nature of charges and to discuss minimum and maximum penalties of charged offenses, but record revealed knowing and voluntary plea); *Hall*, 143 Vt. at 595-96, 469 A.2d at 758-59 (court failed to outline minimum and maximum penalties of charged offense, but subst ntially complied with Rule 11).

Of course, relief in collateral proceedings is not foreclosed in all instances. For example, relief is available when the record fails to remove doubt as to whether the petitioner understood the charges at the time of the plea or whether a factual basis existed for the charges. See *In re Kasper*, 145 Vt. 117, 120-21, 483 A.2d 608, 610-11 (1984) (post-conviction relief granted where record of plea hearing revealed that accused was not given any recitation of factual allegations underlying charges, to which there was only cursory and general reference); *In re Dunham*, 144 Vt. 444, 448, 479 A.2d 144, 147 (1984) (post-conviction relief granted where record revealed doubt as to whether factual basis existed for intent element of murder charge).

Here, the record demonstrates that the district court's colloquy with defendant comported with due process and substantially complied with Rule 11(c). Petitioner faced the same charges from arraignment onward. Although the charges were extremely serious, they were simple and straightforward. At the court's request, the prosecutor detailed the facts underlying the charges in language closely tracking the informations containing the elements of the crimes. In response to the court's questioning, defense counsel indicated that he and his client had reviewed the evidence in the case as it related to the charges and were convinced that the State could make out a prima facie case of petitioner's guilt. Defense counsel also stated that petitioner's attorneys had gone over the plea-agreement forms with him.

Petitioner confirmed that he had had an opportunity to discuss the case with his attorneys and that he had signed the plea-agreement forms that were before the court. The three forms set forth the charges and the recommended sentences. Petitioner's dialogue with the court plainly indicated that he had reviewed the forms with his attorneys. For example, until he was informed that he would still be able to appeal the court's competency ruling, as permitted by the conditional plea agreement, he was confused by the court's statement that he was giving up his right to have a jury trial and to appeal from the jury's verdict. Further, when asked whether it was his decision to go along with the plea agreements, he stated that he did not understand the bottom part of one of the forms that dealt with motor vehicle offenses. Once that issue was cleared up, petitioner expressed satisfaction with the agreements. Moreover, when he was asked if he had signed the three forms, he indicated that he had not signed the conditional plea and that he wished to do so at that time.

Given this record, we uphold the superior court's conclusion that petitioner was apprised of and understood the nature of the crimes with which he was charged. See *In re Kivela*, 145 Vt. 454, 458, 494 A.2d 126, 128-29 (1985) (rejecting petitioner's argument that he did not understand nature of charges where record of plea hearing revealed that state's attorney presented detailed and unchallenged recitation of facts underlying charges); see also *Henderson v. Morgan*, 426 U.S. 637, 647 (1976) (suggesting that PCR petition based on trial court's failure to apprise defendant of nature of charges would be unsuccessful if record contained representation by defense counsel that nature of offenses had been explained to him; indeed, even without such representation, it may be appropriate to presume in

most cases that defense attorneys routinely explain nature of offenses in sufficient detail to apprise defendants of what they are being asked to admit); *Hall*, 143 Vt. at 596, 469 A.2d at 759 (it may be presumed that counsel discussed with defendant those elements of Rule 11 that he claims were not explained to him at plea hearing in particularized fashion); cf. *State v. Gabert*, 152 Vt. 83, 89-90, 564 A.2d 1356, 1360 (1989) (court did not violate Rule 11 by failing to apprise defendant of culpable mental state required for sexual assault conviction because facts alleged at plea hearing did not allow for possibility that offenses were committed without culpable state of mind).

We also uphold the superior court's conclusion that the record demonstrates that petitioner was apprised of and understood the potential punishment he faced for his crimes. The district court could not have informed petitioner of the mandatory minimum penalties for the crimes of sexual assault and aggravated sexual assault because there is no mandatory minimum penalty for either of those offenses. See 13 V.S.A. § 3252(a) (person convicted of sexual assault shall be imprisoned for not more than twenty years and fined not more than $10,000, or both); 13 V.S.A. § 3253(b) (person convicted of aggravated sexual assault shall be given maximum sentence of life imprisonment, or maximum fine of $50,000, or both); V.R.Cr.P. 11(c)(2) (court shall assure that defendant understands "the mandatory minimum penalty, *if any*, and the maximum possible penalty" of the charged offenses) (emphasis added). As for the maximum penalty, the waiver-of-rights form that petitioner signed and discussed with his attorneys plainly indicates in capital, handwritten letters that the maximum penalty for the charged offenses is "LIFE." But even if we were to assume that petitioner did not understand this fact, we fail to see how his awareness that he was facing a life sentence for the charged crimes would have convinced him to go to trial rather than accept a plea bargain.

Petitioner argues, however, that, at a minimum, the superior court was required to hold an evidentiary hearing before granting the State summary judgment because he raised a material factual dispute as to whether he understood the nature of the charges and the potential punishment. Apparently, petitioner wished to present evidence concerning two affidavits his attorneys had submitted at the competency hearing stating their difficulties in communicating with him. The superior court did not err in refusing to revisit this issue. After hearing expert testimony and observing petitioner's demeanor

478

in the courtroom, the district court had determined that petitioner was competent to stand trial. On direct appeal, we held that the evidence supported the court's findings that petitioner could adequately consult with others, and that he "was aware of the specific charges, the potential penalties, and the potential consequences of the proceedings." *Thompson*, 162 Vt. at 535, 650 A.2d at 141.

Citing *Godinez v. Moran*, 509 U.S. 389 (1993), petitioner argues, however, that whether he was competent to stand trial is a separate question from whether he knowingly and voluntarily pled no contest. As the Court in *Godinez* stated, in addition to determining that a defendant who seeks to plead guilty is competent, the trial court must satisfy itself that the waiver of his constitutional rights is knowing and voluntary. *Id.* at 400. Only in this sense, according to the Court, is there a "heightened" standard for pleading guilty, "but it is not a heightened standard of *competence*." *Id.* at 401 (emphasis in original). Thus, petitioner, who was found competent to stand trial six days before the change-of-plea hearing, cannot prevail by claiming that his mental state prevented him from communicating with his attorneys and understanding either their or others' explanation of the nature of the charges and the potential punishment. As noted, we affirmed the district court's competency ruling, and the record of the plea hearing demonstrates that petitioner knowingly and voluntarily pled no contest to the charged offenses.

■ Petitioner also contends that the superior court's summary judgment ruling is procedurally flawed because the State never moved for summary judgment, and thus petitioner was not given an adequate opportunity to demonstrate that there existed a genuine dispute over material facts. This argument is without merit. The trial court may enter summary judgment against the moving party when appropriate. V.R.C.P. 56(c)(3). At the hearing on petitioner's motion for summary judgment, the state's attorney plainly stated her position that the petition should be dismissed. Further, the discussion between the court and the attorneys indicated that the court would consider resolving the case, regardless of who prevailed, without holding an evidentiary hearing. Thus, petitioner was on notice that he should submit any additional memoranda or documents to thwart a possible summary judgment ruling in favor of the State.

In petitioner's view, the "decisive" issue is whether we should continue to require defendants who claim for the first time on appeal that the trial court violated Rule 11 either to demonstrate plain error on direct appeal, see *Ploof*, 162 Vt. at 562-63, 649 A.2d at 776 (citing

*Thompson*, 162 Vt. at 534, 650 A.2d at 140, and *Doleszney*, 139 Vt. at 81, 422 A.2d at 932), or to demonstrate prejudice in a PCR proceeding. Petitioner's argument is nothing more than a renewed and untimely request for reargument of our application of the plain-error standard in his direct appeal from his criminal conviction, and thus we need not address it. Even if we were to agree that we should change the standard of review we apply in direct appeals concerning claimed Rule 11 violations, such a decision would not affect this case, which is an appeal from denial of relief requested in a post-conviction petition.

*Affirmed.*