2008 VT 65

## In re Leonard Parks

[956 A.2d 545]

No. 07-049

Present: Reiber, C.J., Dooley, Johnson, Skoglund and Burgess, JJ.

Opinion Filed May 9, 2008

*Matthew F. Valerio*, Defender General, and *Seth E. Lipschutz*, Prisoners' Rights Office, Montpelier, for Petitioner-Appellant.

*Thomas Donovan, Jr.*, Chittenden County State's Attorney, and *Pamela Hall Johnson*, Deputy State's Attorney, Burlington, for Respondent-Appellee.

¶ 1. **Johnson, J.** Defendant Leonard Parks appeals a superior court order granting summary judgment to the State on a post-conviction relief (PCR) petition in which defendant sought reversal of assault-and-robbery and larceny-from-a-person pleas based on his failure to explicitly waive important constitutional rights. Because the record lacks any evidence that defendant knowingly and voluntarily pled to the charges or that defendant deliberately relinquished the double jeopardy violation on the face of the charges, we reverse and vacate defendant's convictions.

¶ 2. In October 2004, the State charged defendant with assault and robbery, and later added a habitual-offender charge, which exposed him to a potential life sentence. In August 2005, defendant and his attorney signed a notice-of-plea agreement with the State. The State agreed to strike the habitual-offender charge in exchange for defendant's guilty pleas to the assault-and-robbery charge and one count of larceny from the person — added to allow the State to recommend an eight-to-fifteen-year sentence. Thus, the plea agreement, on its face, permitted multiple punishments for the same crime in violation of the Double Jeopardy Clause.

¶ 3. The district court held a change-of-plea hearing, at which the trial judge would ordinarily have engaged in a Vermont Rule of Criminal Procedure 11 colloquy with defendant to ensure defendant's plea was knowing and voluntary. Instead, the trial judge gave a speech, directed at defendant, on the role of the State and jury in the criminal process, the rights afforded to defendants at trial, and sentencing considerations if defendant entered the plea. At no point during this speech did the judge inquire of defendant whether he understood the information or wished to continue with the plea despite its legal consequences.

¶ 4. Before accepting the plea, the district court questioned defense counsel as to whether defendant was being charged with the same crime twice. Counsel responded that it was "a plea of convenience" and that "we've dropped the habitual offender, which was for our benefit." The court further addressed defense counsel regarding defendant's possible double jeopardy defense, and counsel again responded: "[w]e're going to waive the legal defense and going to enter a no contest plea, acknowledging that this is a plea of convenience." The court read the first charge to defendant, who pleaded no contest. The court then turned to what it referred to as "the accommodation plea" and read the larceny-from-a-person charge. Defendant did not respond; however, the court on its own initiative noted, "that's a nolo also."

¶ 5. At defendant's sentencing hearing held in January 2006, the court again questioned defense counsel about the legal defense to the two charges. Counsel replied that "we waived [the defense] to get rid of the habitual offender." Defendant was sentenced to five to ten years' imprisonment on the assault-and-robbery conviction and zero to five years' imprisonment on the larceny-from-a-person conviction, to be served consecutively. On February 10, 2006, defendant filed a pro se motion for sentence reconsideration. The court denied the motion, noting: "[c]harge amended from habitual offender with life imprisonment under plea agreement — [defendant] received sentence lower than what prosecutor wanted."

¶ 6. In March 2006, defendant filed a PCR petition, claiming that his plea agreement was invalid because: (1) he did not waive the double jeopardy challenge to the two convictions; (2) he did not plead to the second charge; and (3) the court failed to determine whether his plea was voluntary in accordance with Rule 11. Both defendant and the State filed for summary judgment. The court granted the State's motion, finding that defendant

understood the purpose of the double charge, as well as its constitutional implications, and waived his defense in exchange for the State's concession to drop the habitual-offender charge. This appeal followed.

¶ 7. On appeal, defendant renews his claim that the court's failure to engage him in the required colloquy pursuant to Rule 11 rendered his plea involuntary. Furthermore, defendant argues that he did not waive the facial double jeopardy violation in his plea agreement, and that the agreement therefore violated his due process rights.

¶ 8. We turn first to defendant's Rule 11 claim. The underlying purpose of Rule 11 is to ensure that a defendant's plea is both knowing and voluntary. *State v. Morrissette*, 170 Vt. 569, 571, 743 A.2d 1091, 1092 (1999) (mem.). In accepting a plea agreement, a defendant waives important constitutional rights, including the right to a jury trial and the right to confront adverse witnesses. *In re Hall*, 143 Vt. 590, 594, 469 A.2d 756, 758 (1983); *Boykin v. Alabama*, 395 U.S. 238, 243 (1969). As such, before the trial court may accept a plea of guilty or nolo contendere, it must assure itself that the defendant has "a full understanding of what the plea connotes and of its consequence." *Boykin*, 395 U.S. at 244. Compliance with Rule 11 is the procedural manner in which the trial court creates a record demonstrating that defendant's plea and consequent waiver of constitutional rights is both knowing and voluntary. Thus, the Rule 11 colloquy is not just a technical litany intended to alter the smooth flow of operations in the trial court. It is a procedure with constitutional implications for the defendant.

¶ 9. Pursuant to Rule 11, the court may not accept a plea of nolo contendere unless it determines by colloquy in open court that the defendant understands:

(1) the nature of the charge to which the plea is offered;

(2) the mandatory minimum penalty, if any, and the maximum possible penalty provided by law for the offense to which the plea is offered . . . ;

(3) that the defendant has the right to plead not guilty . . . ; [and]

(4) that if the defendant's plea . . . is accepted by the court there will not be a further trial of any kind, so that

by pleading the defendant waives the privilege against self-incrimination, the right to trial by jury or otherwise, and the right to be confronted with the witnesses against the defendant; . . . .

V.R.Cr.P. 11(c). Furthermore, the court must inquire of the defendant whether he entered the plea willingly, or whether it was instead the "result of force or threats or of promises apart from a plea agreement." V.R.Cr.P. 11(d).

¶ 10. The record before us evinces a wholesale failure by the trial court to engage defendant in a Rule 11 colloquy. Notwithstanding Rule 11's requirements, the trial judge did not personally address defendant at the change-of-plea hearing, except to ask for his plea on the assault-and-robbery charge. See V.R.Cr.P. 11(c). The trial judge in no way ensured that defendant understood the nature of the charges to which he was pleading. See V.R.Cr.P. 11(c)(1). He did not question defendant regarding defendant's understanding of the potential sentence to which he would be subject by pleading nolo. See V.R.Cr.P. 11(c)(2). Nor did the trial judge determine whether defendant understood his right to maintain a plea of not guilty. See V.R.Cr.P. 11(c)(3). Above all, however, the trial judge failed to ensure that defendant knew and understood that by pleading nolo he would waive important constitutional rights that are personal to defendant, including the right to a trial by jury. See V.R.Cr.P. 11(c)(4). Instead, the court made general remarks regarding the role of criminal trials in our justice system, the trial rights afforded to defendants, and some of the risks involved in pleading to the charges. While these statements were directed to defendant, they did nothing to ensure that defendant understood the information. Likewise, the court did not address defendant with respect to the serious double jeopardy violation presented by the plea agreement. Rather, the court asked defense counsel whether the two charges were essentially the same thing, and accepted counsel's response without determining if defendant understood the due process rights involved and willingly relinquished them. Furthermore, the court failed to inquire of defendant whether he was entering the plea voluntarily. See V.R.Cr.P. 11(d). Finally, and most perplexingly, the court entered nolo contendere pleas on both charges despite the fact

that defendant did not actually plead to the second charge, larceny from a person, in open court.

¶ 11. Post-conviction relief is "available when fundamental error is found in a court's acceptance of a plea of guilty or nolo contendere." *In re Hemingway*, 168 Vt. 569, 570, 716 A.2d 806, 809 (1998) (mem.). Defendants who allege merely "[t]echnical or formal violations" of Rule 11 must prove prejudice to prevail in a PCR proceeding, as we will not allow a procedural oversight to frustrate a plea where the court's substantial compliance with the rule affords the defendant "fair and just process." *Hall*, 143 Vt. at 596, 469 A.2d at 759. Where, however, "the record fails to remove doubt as to whether the petitioner understood the charges at the time of the plea or whether a factual basis existed for the charges," there is fundamental error resulting in prejudice to the defendant's plea. *In re Thompson*, 166 Vt. 471, 475, 697 A.2d 1111, 1113 (1997). In the case at hand, the judge completely failed to "engage[] in an open dialogue with the defendant involving a discussion of all of the Rule 11(c) [and (d)] elements to the end that . . . the record substantiate[d], that the defendant kn[ew] and underst[ood] the full array of legal consequences that attach[ed]" to his plea agreement. *Hall*, 143 Vt. at 595, 469 A.2d at 758. As such, we cannot find that the colloquy's shortcomings were of a technical nature or that the court substantially complied with its Rule 11 responsibilities. Rather, the error affected the fundamental fairness of the proceedings against defendant.

¶ 12. This case differs in significant respects from those in which we have found trial courts to be in substantial compliance with Rule 11. In *State v. Marku*, we found substantial compliance with Rule 11 where the court engaged in a dialogue with the defendant in open court about his understanding of the nature of the charges, the terms of the plea agreement, and the constitutional rights that he would forfeit as a result. 2004 VT 31, ¶¶ 14-15, ¶¶ 23-25, 176 Vt. 607, 850 A.2d 993 (mem.). Similarly, in *State v. Morrissette*, the defendant signed a waiver-of-rights form that addressed the requirements of Rule 11(c), was asked directly by the court whether he received and understood the information in the documents and replied affirmatively, and, finally, was asked by the court if he had any further questions regarding his plea, which he did not. 170 Vt. at 570-71, 743 A.2d at 1092-93. Under those circumstances, we held that the court substantially complied with Rule 11, as there was ample evidence in the record that the

defendant understood the consequences of his plea and voluntarily entered it. *Id.* at 571, 743 A.2d at 1093.

¶ 13. In contrast, the court in the instant case did not ask defendant to enter a plea on the second charge let alone question defendant with respect to his understanding of the plea agreement or the constitutional rights at stake before accepting either plea. The only record evidence that defendant voluntarily entered the plea was a signed notice-of-plea agreement, which simply set out the agreed upon charges without any reference to the legal consequences of the plea. Nor did defendant sign a waiver-of-rights form — which might, at the very least, have given the court some indication that he was knowingly entering into the agreement.

¶ 14. Given the trial court's failure to satisfy itself that defendant's plea was knowing and voluntary, we cannot agree with the State that to prevail in his PCR petition defendant must show he would not have pled to the charges but for the court's Rule 11 violations. Rather, the facts here compel us to follow our line of cases holding Rule 11 violations to be plain error regardless of a showing of actual prejudice. A trial court's failure to satisfy any of the core objectives of Rule 11 — ensuring that the guilty plea is free of coercion, that the defendant understands the nature of the charges against him, and that the defendant is aware of the direct consequences of his plea — affects the defendant's substantial rights. *State v. Thompson*, 167 Vt. 383, 387, 708 A.2d 192, 194 (1998) (citing *United States v. Quinones*, 97 F.3d 473, 475 (11th Cir. 1996)).

¶ 15. In *State v. Thompson*, we reversed the trial court where the court's brief colloquy with the defendant did not assure us that the "defendant was aware of the direct consequences of entering the plea." 167 Vt. at 387, 708 A.2d at 194. The court's failure to engage the defendant in the required Rule 11 colloquy "undermine[d] confidence in the outcome of the proceedings and thus was plain error." *Id.* Likewise, in *In re J.M.*, the trial court failed to conduct any Rule 11 colloquy with a juvenile charged with simple assault. 172 Vt. 61, 63, 769 A.2d 656, 658-59 (2001). We held that the court committed plain error because it failed to address the juvenile and determine whether he understood the nature of the charges against him, the penalties provided by law, and the important constitutional rights he was waiving. *Id.* at 63,

769 A.2d at 659. In the instant case, the court similarly failed to engage defendant in any colloquy or determine whether he understood the legal consequences of the agreement, undercutting our confidence in the outcome of the change-of-plea hearing and thus prejudicing defendant's pleas. The record here gives us no assurances that defendant voluntarily waived the important personal rights guaranteed to him by the Constitution; thus, we are unable to rely on it.

¶ 16. Defendant's claim that he did not deliberately waive the double jeopardy violation on the face of the plea agreement provides an additional ground for granting defendant's PCR petition. The Double Jeopardy Clause of the Federal Constitution prohibits the State from prosecuting a defendant twice for the same offense. *State v. Wiley*, 2007 VT 13, ¶ 8, 181 Vt. 300, 917 A.2d 501. Here, the State does not dispute that charging defendant with assault and robbery and larceny from a person for the same conduct created a double jeopardy violation. The State explicitly added the larceny-from-a-person charge to the plea agreement to advocate for a longer sentence, but contends that defendant effectively waived his double jeopardy defense by pleading to the charges.[1]

■ ■ ¶ 17. To be sure, as with other constitutional rights, a defendant may voluntarily waive a double jeopardy claim. See *United States v. Stanwood*, 872 F. Supp. 791, 796 (D. Or. 1994) ("It is clear that a double jeopardy claim can be waived if a party chooses to do so."). Typically, important constitutional rights of the defendant, such as the right to be free from double jeopardy, can be waived only by "intentional relinquishment or abandonment" of the right. *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938). But in the context of plea agreements, conscious waiver of every potential defense is not necessarily required, and an intelligent plea in compliance with Rule 11 typically forecloses collateral attack on the plea. *United States v. Broce*, 488 U.S. 563, 573 (1989). Thus, a guilty plea may implicitly waive a double jeopardy defense otherwise available to the defendant if: (1) the plea is entered into knowingly and voluntarily, and (2) the charges to which the defendant pleads do not on their face create a double jeopardy

---

[1] We note that, as a general matter, it is not good practice for the State to negotiate constitutionally infirm charges simply to allow it to recommend a lengthier sentence.

violation. *Id.* at 570, 575. Where a double jeopardy violation is apparent on the face of the indictment, however, the defendant must "deliberately relinquish" his right against double jeopardy to effectuate waiver. *Taylor v. Whitley*, 933 F.2d 325, 330 (5th Cir. 1991); see also *Johnson*, 304 U.S. at 464 ("intentional relinquishment or abandonment" required to waive personal right of defendant).

¶ 18. In *Broce*, the United States Supreme Court held that the respondents' knowing and voluntary guilty plea acted as a waiver of their potential double jeopardy claim. 488 U.S. at 570-74. The respondents pled guilty to two charges of conspiracy, both related to bid-rigging on highway projects. In their habeas corpus petition, the respondents argued that the bid-rigging schemes alleged in their indictments were part of a single conspiracy, and that their guilty pleas to two separate charges of conspiracy violated their right against double jeopardy. Because a guilty plea is an admission that the defendant committed the substantive crimes charged against him, the Court reasoned: "[j]ust as a defendant who pleads guilty to a single count admits guilt to the specified offense, so too does a defendant who pleads guilty to two counts with facial allegations of distinct offenses concede that he has committed two separate crimes." *Id.* at 570. As such, in pleading to the charges of two distinct agreements, the respondents conceded guilt to two separate offenses, and thereby relinquished their entitlement to challenge the government's theory under the Double Jeopardy Clause. *Id.* at 571.

¶ 19. On the contrary, in the case at hand, defendant's pleas — to the extent that he can be said to have pled to both charges — were neither knowing and voluntary nor facially distinct. As explained in our Rule 11 analysis, we cannot say with any confidence that defendant understood the legal consequences of his plea agreement and willingly entered into it. Furthermore, the assault-and-robbery and larceny-from-a-person charges alleged the same facts and amounted to the same offense. Defendant's situation more closely resembles the facts of *Menna v. New York*, wherein the Court held that "a plea of guilty to a charge does not waive a claim that — judged on its face — the charge is one which the State may not constitutionally prosecute." 423 U.S. 61, 63 n.2 (1975) (per curiam). Thus, because defendant here could not constitutionally be haled into court on the two essentially identical charges, his plea to the charges cannot be construed as a waiver

of his right against double jeopardy. *Broce*, 488 U.S. at 574-75; accord *United States v. Kaiser*, 893 F.2d 1300, 1302 (11th Cir. 1990); *Launius v. United States*, 575 F.2d 770, 771 (9th Cir. 1978); *Patton v. People*, 35 P.3d 124, 128 (Colo. 2001).

¶ 20. A defendant who enters a guilty or nolo plea despite indictments that "evince on their face a double jeopardy violation must *expressly relinquish* his rights against double jeopardy" to effectively waive his right to challenge the constitutional violation. *Taylor*, 933 F.2d at 330 (emphasis added). Neither party disputes that there was no deliberate or intentional act by defendant personally that could be construed as a waiver of his right against double jeopardy. Nonetheless, the State contends that defense counsel's representations that defendant was waiving his "legal defense" as part of a "plea of convenience" should be accepted as a waiver of defendant's personal, constitutional right.[2] Given that there is no record evidence that defendant's plea was voluntary or that he understood the constitutional implications of the plea generally, we cannot construe his counsel's statements as an intentional or express relinquishment of the important right against double jeopardy, absent some public acceptance of the plea by defendant in the context of a Rule 11 colloquy. Cf. *Broce*, 488 U.S. at 573-74 (stressing importance of voluntariness of plea in finding relinquishment of right against double jeopardy). We do not doubt that defense counsel knew and understood the double jeopardy implications of pleading to the essentially identical charges. What we do not know from the record before us is whether *defendant* had any understanding of the constitutional consequences of pleading to the charges. Defendant cannot be said to have deliberately relinquished the double jeopardy violation on the face of the plea agreement, which further undermines our confidence in the outcome of the proceeding against defendant.

---

[2] It remains unsettled whether, and under what circumstances, defense counsel may relinquish the right against double jeopardy on a defendant's behalf. See, e.g., *Watkins v. Kassulke*, 90 F.3d 138, 142 (6th Cir. 1996) ("the question of whether a waiver of double jeopardy rights by counsel binds a criminal defendant depends on whether such decision involves 'personal rights' as opposed to trial strategy"); *Jones v. Barnes*, 463 U.S. 745, 751 (1983) (United States Supreme Court has thus far identified only four personal rights that a defendant has exclusive authority to waive: (1) the right to a trial; (2) the right to a jury; (3) the right to testify; and (4) the right to self-representation). Regardless of counsel's ability to waive the right generally, however, the facts of this case militate against finding waiver of the right here.

¶ 21. Finally, the State's contention that the plea agreement was overall favorable to defendant, allowing him to avoid the habitual-offender charge, in no way undermines our finding of fundamental error by the trial court. Typically, guilty pleas result from a plea bargain which, by nature, offers some incentive to the defendant to forfeit his or her constitutional rights to a jury trial. See *Launius*, 575 F.2d at 772. The fact that the defendant stands to gain something by entering into a plea agreement, however, cannot alone serve as proof of his willingness to do so despite the serious constitutional implications of such a decision. See *id.* Otherwise, every plea agreement would de facto meet the requirements of Rule 11.

¶ 22. To hold that defendant's pleas here were knowing and voluntary would in effect overrule the provisions of Rule 11 — which were intended to promote the finality of guilty pleas and prevent collateral attack by requiring that trial judges enter a plea only after personally ensuring, on the record, that the defendant understands the consequences and willingly chooses to enter the plea. See *State v. Yates*, 169 Vt. 20, 25-26, 726 A.2d 483, 486-87 (1999). Rule 11 is essential, however, not because it provides judges with a procedural checklist shielding their decisions from collateral attack, but because it is the means by which we enforce fundamental rights guaranteed to defendants by the Constitution. Here, not only is the record entirely devoid of evidence that the plea agreement was entered into knowingly and voluntarily, but the double jeopardy violation apparent on the face of the plea was not deliberately waived by defendant. Under these circumstances, we must reverse the summary judgment in favor of the State and vacate defendant's plea. See V.R.C.P. 56(c)(3); *O'Donnell v. Bank of Vt.*, 166 Vt. 221, 224, 692 A.2d 1212, 1214 (1997) (on review of a summary judgment decision, we apply the same standard as the trial court, upholding judgment only where there are no issues of material fact and the moving party is entitled to judgment as a matter of law).

*Summary judgment is reversed, and the plea is vacated. The matter is remanded to the district court for further proceedings.*